UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No.: 1:05-CR-26 |
| | ) | |
| JOSE LUIS COLAZO-GARCIA | ) | |

**MEMORANDUM OF OPINION AND ORDER**

This matter is before the court for the resolution of issues pertaining to the sentencing of the Defendant, Jose Luis Colazo-Garcia ("Colazo-Garcia" or "Defendant"). The Defendant has filed a Motion for Downward Departure, as well as a Motion to Reduce Sentence to Avoid Unwarranted Sentence Disparity ("Motion to Reduce Sentence"). The Defendant and the United States of America (the "Government") have each filed briefs addressing the issues raised by the Defendant, and briefing was completed on February 14, 2006. For the following reasons, the Motion for Downward Departure is DENIED and the Motion to Reduce Sentence is DENIED.

**FACTUAL AND PROCEDURAL BACKGROUND**

Colazo-Garcia was originally charged by way of a Complaint filed by the Government on April 12, 2005. Docket at 1. That Complaint was soon dismissed and replaced by an Indictment. Docket at 11. The Indictment charged the Defendant with a violation of 8 U.S.C. § 1326(a), reentry of a removed alien. Colazo-Garcia entered a plea of guilty to the charge on July 12, 2005.

Prior to sentencing, Colazo-Garcia filed his Motion for Downward Departure. Docket at 30. On September 19, 2005, the court held a sentencing hearing. At that hearing, the Defendant expressed dissatisfaction with his court-appointed attorney, who also filed a Motion to Withdraw. Docket at 33. The court allowed counsel to withdraw and directed the Federal

Community Defender to appoint a new attorney.  For that reason, the sentencing was continued. The court held a further sentencing hearing on December 19, 2005, during which the Defendant presented evidence in support of his Motion for Departure, and argument in support of his Motion to Reduce Sentence.  The court ordered further briefing of the issues raised by the Defendant, particularly with those in his Motion to Reduce Sentence.  The court issues this Order for purposes of resolving all sentencing issues.

**1. Motion for Downward Departure.**

Colazo-Garcia's Motion for Downward Departure is based on what he argues are his extraordinary family ties and responsibilities.  He requests that the court depart downward pursuant to U.S.S.G. § 5H1.6 and § 5K2.0.

Defendant called his girlfriend, Pearla Tagle, as a witness at his sentencing hearing.  Ms. Tagle stated that she and Colazo-Garcia have been dating for several years and have a two-year-old son together.  She claimed that she is not well educated and is unable to obtain adequate employment to support their son properly.  Ms. Tagle did attend Snider High School through the 10th grade, but claimed that she "did not do well" and that she may have some sort of learning disability.  Ms. Tagle did testify that she has worked as a waitress in the past, though Colazo-Garcia stated that she was unemployed at the time he filed his Motion for Downward Departure. Motion for Downward Departure, Docket at 30, p. 2.  Ms. Tagle testified that while working as a waitress she made $3.25 per hour plus tips.  She did not claim during her testimony that she is unable to work, only that she is unable to bring in income that is adequate to support herself and her son.

2

Ms. Tagle testified that she does have family members in Fort Wayne, including her mother, brother, and a sister. However, she maintains that none of them have any excess income to help support her and her son. Accordingly, Colazo-Garcia argues that he should be granted a downward departure because he is an "irreplaceable wage earner and care giver in his family . . . ." *Id.*, p. 1

Section 5H1.6 addresses the issue of a departure for extraordinary family circumstances. However, the Guidelines Commission expressly states that such departures should be very rarely granted and that the circumstances must clearly fall outside the "heartland" of cases. In fact, the Guidelines expressly state in section 5H1.6 that "family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted." In addition, the case law also reveals unequivocally that in order to avail himself of this type of downward departure, a defendant must establish that his family ties and responsibilities are indeed very unusual and extraordinary. The mere fact that a criminal defendant's family may endure emotional and financial hardship as a result of the defendant's incarceration is not enough to warrant a departure, especially since such hardships are considered the natural, albeit tragic, result of a person's criminal activity. *See, e.g., United States v. Carter,* 122 F.3d 469 (7th Cir. 1997). *See also, United States v. Canoy,* 38 F.3d 893, 906 (7th Cir.1994) ("disintegration of existing family life is insufficient to warrant a departure, as that is to be expected when a family member engages in criminal activity that results in incarceration."[1]

---

[1] In the *Canoy* case, the defendant requested a downward departure based on the facts that she had a one and a half year-old child, and, at the time of sentencing was eight months pregnant. She also cared for two step-children, ages seven and five. The district judge refused her request for a downward departure notwithstanding his acknowledgment of the possibly tragic impact the defendant's incarceration might have on her family.

3

In this case, it is entirely likely that Colazo-Garcia's incarceration will create financial and emotional hardship (maybe even profound hardship) on his fiancé and his young son. But for the reasons just discussed, that tragic fact alone does not warrant a departure under §5H1.6.

**2. Motion to Reduce Sentence.**

    **A. Sentencing Disparity Issue.**

In his Motion to Reduce Sentence Colazo-Garcia raises two issues. First, he argues that there exists an "unwarranted disparity" of sentencing of § 1326 defendants. He presents statistical evidence which he claims demonstrates this disparity. Defendant's Reply, Docket at 43, pp. 3-4. According to the Defendant, a U.S. Sentencing Commission report showed that in 2002 the rate for downward departures in immigration cases nationwide was 31.1%, while the rate in the Seventh Circuit was only 7.2%. He correctly points out that this is largely the result of the PROTECT Act, an Act passed by Congress that permits certain border states, those with a very high number of illegal aliens in their populations, to depart downward from the Sentencing Guidelines for illegal immigrants who plead guilty, agree not to contest deportation, and thereby impose lighter sentences. Such programs are referred to as "fast-track" programs. Colazo-Garcia then argues that since no such program exists in the Seventh Circuit, a sentencing disparity results in immigration cases. He argues that since "the Northern District of Indiana does not appear to have such a program, a strong argument exists to impose a sentence up to four (4) levels below the guideline range that would result if the program were in effect here." Motion to Reduce Sentence, Docket at 41, p. 3.

4

Colazo-Garcia raises a very interesting point. The statistics he presents in his briefs in support of his request for a reduced sentence confirm that § 1326 defendants in other jurisdictions are, in fact, receiving significantly reduced sentences when compared with similar defendants in the Seventh Circuit. *See,* Defendant's Response, Docket at 46, pp. 8-10; Defendant's Reply, Docket at 43, pp. 3-4. As Colazo-Garcia puts it, it appears patently unfair on its face that the mere fact that he was charged in Indiana should result in a much higher sentence than he might receive if he had been charged with the same offense in, say, California or Arizona (two jurisdictions which utilize the "fast-track" programs).

As compelling as Colazo-Garcia's argument may appear, it must fail. The Seventh Circuit Court of Appeals has addressed this precise issue just days before the entry of this Order. The appellate court's holding puts an end to this debate. In *United States v. Martinez-Martinez*, 2006 WL 722140 (7th Cir., March 23, 2006), the defendant (like Colazo-Garcia) was charged and convicted of illegal reentry after deportation for an aggravated felony. He had requested a reduced sentence from the district court for the precise reasons presented by Colazo-Garcia in this case. That is, Martinez-Martinez argued that since he was charged and convicted in Indiana, a state without a "fast-track" program, he was subjected to a much harsher term of imprisonment than if he had been charged and convicted in a state that *did* utilize such a program. Such a disparity in sentencing, he argued, based solely on geographic concerns, was unwarranted and in contravention of U.S.S.G. § 3553(a)(6).[2] The district court rejected the defendant's argument

---

[2] This section of the Federal Sentencing statute requires that a sentencing court impose a sentence that, among other factors, "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . ." 18 U.S.C. § 3553(a)(6).

5

and the Seventh Circuit affirmed his sentence. In doing so, the appellate court addressed at length the sentencing disparity issue created by Congress's enactment of the PROTECT Act (Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003) and its authorization of "fast-track" sentencing programs. The relevant portions of the appellate court's discussion and analysis are as follows:

> Mr. Martinez contends that his 41-month sentence was unreasonable because the district court created an unwarranted sentencing disparity in contravention of § 3553(a)(6). Mr. Martinez's sentence is within a properly calculated guideline range and is therefore presumptively reasonable. *See United States v. Paulus,* 419 F.3d 693, 700 (7th Cir.2005); *United States v. Mykytiuk,* 415 F.3d 606, 608 (7th Cir.2005). Thus, in order to prevail, Mr. Martinez must rebut this presumption of reasonableness. *Mykytiuk,* 415 F.3d at 608.
>
> Mr. Martinez bases his unreasonableness claim on the disparity between his sentence and sentences of other defendants who are similarly situated. He claims that this disparity is caused by the practice of some federal judicial districts to employ a fast-track sentencing program. Fast-tracking is a procedure that began in states bordering Mexico, where district courts were experiencing high case loads due to immigration matters. *See United States v. Morales-Chaires,* 430 F.3d 1124, 1127 (10th Cir.2005). In its original form, prosecutors offered defendants reduced sentences through charge-bargaining or through a motion for downward departure in exchange for pre-indictment guilty pleas. *Id.*
>
> Congress has, through various measures, indicated its approval of fast-track procedures. In 2003, Congress enacted the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003 ("PROTECT Act"), which, although not addressing specifically the practice of charge-bargaining, specifically sanctioned the use of fast-track programs. The PROTECT Act required the United States Sentencing Commission to develop a guideline "authorizing a downward departure of not more than 4 levels if the Government files a motion for such a departure pursuant to an early disposition program authorized by the Attorney General and the United States Attorney." PROTECT Act, Pub.L. No. 108-21, § 401(m)(2)(B), 117 Stat. 650 (2003), 28 U.S.C. § 994 (note). Prior to the enactment of the PROTECT Act, the House of Representatives issued a report regarding a companion bill, the Child Abduction Prevention Act of 2003, and commented on its reasons for legislating in this area. H.R.Rep. No. 108-48, at 7 (2003). According to this report, Congress intended to provide relief to districts with crowded immigration dockets by recognizing the

6

authority of the courts to grant "limited departures" in accordance with structured early disposition programs. *Id.* Yet, the report noted that such programs should be reserved for offenses "whose high incidence within the district has imposed an extraordinary strain on the resources of that district as compared to other districts." *Id*. Congress thus recognized that disparities would exist between the sentences of those in fast-track jurisdictions and those outside of those jurisdictions. Congress further noted that its recognition of early disposition programs "does not confer authority to depart downward on an ad hoc basis in individual cases." *Id*. The Sentencing Commission developed U.S.S.G. § 5K3.1 to implement Congress' directive: Upon motion of the Government, the court may depart downward not more than 4 levels pursuant to an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides.

Given Congress' explicit recognition that fast-track procedures would cause discrepancies, we cannot say that a sentence is unreasonable simply because it was imposed in a district that does not employ an early disposition program. Congress simply has authorized prosecutorial authorities to weigh the benefits of a longer sentence against the burdens of delay and oppressive case management issues and, in such situations, to determine that the public good requires that the latter value be given preference. The First Circuit has suggested: "It is arguable that even post- *Booker,* it would never be reasonable to depart downward based on disparities between fast-track and non-fast-track jurisdictions given Congress' clear (if implied) statement in the PROTECT Act provision that such disparities are acceptable." *United States v. Martinez-Flores,* 428 F.3d 22, 30 n. 3 (1st Cir. 2005).

Mr. Martinez argues that the lack of a fast-track program unfairly disadvantaged him as compared to those defendants sentenced for the same crime in districts that do have such a program. He also argues that his sentence is unreasonable because some courts in districts that do not have fast-track procedures, in an effort to avoid sentencing disparity, have imposed sentences shorter than the one recommended by the Guidelines for defendants convicted under § 1326. *See, e.g., United States v. Santos,* 406 F.Supp.2d 320, 325-29 (S.D.N.Y.2005); *United States v. Ramirez-Ramirez,* 365 F.Supp.2d 728, 732-33 (E.D.Va.2005); *United States v. Huerta-Rodriguez,* 355 F.Supp.2d 1019, 1030-31 (D.Neb.2005); *United States v. Galvez-Barrios,* 355 F.Supp.2d 958, 963-64 (E.D.Wis.2005). That some courts have chosen to avoid disparity does not mean that all district courts are compelled to adjust a sentence downward from the advisory guidelines range in order for that sentence to be reasonable. As the Tenth Circuit recognized, fasttracking in other jurisdictions creates the possibility of sentencing disparities; yet such a disparity is merely one of several factors that must be considered in crafting a particular defendant's sentence. *Morales-Chaires,* 430 F.3d at 1131. A

> sentence within the advisory guidelines range presumptively takes into consideration all of the other factors set forth in § 3553(a), and Mr. Martinez has not satisfied his burden of rebutting the reasonableness of his sentence.

*Id.*, *2-3.  Notwithstanding this thorough discussion of the issue, it could be argued that the appellate court's language in the *Martinez-Martinez* case still permits a sentencing court to depart on the basis of this disparity issue based on post-*Booker* discretion.  For example, when citing the Tenth Circuit decision in *Morales-Chaires*, the court stated that "such a disparity is merely one of several factors that must be considered in crafting a particular defendant's sentence."  This sentence appears to conflict with the rest of the court's discussion, which implies that since Congress expressly anticipated that sentencing disparities would emerge, courts sitting in jurisdictions that *do not* have "fast-track" programs should not consider a departure on that basis.  However, the day after it issued its opinion in *Martinez-Martinez*, the court issued another (as yet unpublished) opinion that clarifies the matter further.  In *United States of America v. Galicia-Cardenas*, 2006 WL 751349 (7th Cir., March 24, 2006) (slip copy), the court vacated the sentence of the defendant, to whom the district court had granted a four-level downward departure in order to compensate for the so-called "fast-tracking" disparity.  In doing so, and remanding the case for resentencing, the court clearly stated that the defendant "must be resentenced *without a credit* for Wisconsin's lack of a fast-track program.  Whether he deserves a sentence below the advisory guideline range based on other factors is left to the discretion of the district court."  *Id*. at * 2 (italics added).  Since Indiana does not utilize a "fast-track" program, since Congress authorized the implementation of such programs under certain circumstances (and only in certain jurisdictions), and since Congress specifically acknowledged that sentencing disparities would result from its legislation, Colazo-Garcia's argument that he

should receive a four-level downward departure is now without a legal basis.

### B.  "Double Counting" Issue.

Colazo-Garcia's second argument in his motion for a reduced sentence is that he has been subjected to "double counting" since a prior aggravated felony conviction was used to compute not only his criminal history category, but also his offense level.  This alleged "double counting" results in what defendant maintains is an unduly harsh sentence.  He asks the court to exercise its discretion under *Booker* to impose a lesser sentence.  Specifically, Colazo-Garcia argues that "the Presentence Report's imposition of a 16-level enhancement pursuant to [U.S.S.G.] § 2L1.2(b)(1)(A) for deportation after a conviction for an 'aggravated felony' double-counts Defendant's criminal history that produces an unduly harsh result for Colazo-Garcia."  Motion to Reduce Sentence, Docket at 41, p. 3.

While Colazo-Garcia argues that his previous aggravated felony conviction is being unfairly counted twice in determining his sentence, the case law contradicts his position.

For example, in *United States v. Dyck*, the appellate court addressed the issue of so-called "double counting" and stated as follows:

> The [Sentencing] Commission has specifically countenanced that Dyck's prior conviction be used both to enhance his base offense level and to calculate his criminal history score.  See USSG § 2L1.2, comment. (n.5) ("A conviction taken into account under subsection (b)(1) is not excluded from consideration of whether that conviction receives criminal history points.").  We have previously rejected the double counting argument, concluding that it was reasonable for the Commission to punish certain previously deported aliens more severely than others.  *See United States v. Crawford,* 18 F.3d 1173, 1179-80 (4th Cir.1994), *cert. denied,* 513 U.S. 860, 115 S.Ct. 171 (1994).

*United States v. Dyck*, 334 F.3d 736, 740 (8th Cir. 2003).

9

The Seventh Circuit also addressed this very issue in another (albeit unpublished) opinion.  In *United States v. Romero*, 149 Fed.Appx. 473 (7th Cir. 2005), the court stated as follows:

> Next counsel considers whether Romero's aggravated felony convictions were "double-counted" because they were used to calculate both his offense level and his criminal history category under the guidelines.  This argument would be frivolous because the use of a prior conviction for more than one purpose under the guidelines is not prohibited.  See U.S.S.G. § 2L1.2(b)(1)(A)(I) & cmt. n. 6; see also *United States v. Beith,* 407 F.3d 881, 888 (7th Cir. 2005) (explaining that "double counting" is permitted except where the guidelines include express prohibition or suggest compelling basis for implying prohibition); *United States v. Harris,* 41 F.3d 1121, 1123 (7th Cir.1994) (same).

Therefore, while Colazo-Garcia may be correct that the double counting of his previous aggravated felony results in a harsher sentence, he presents no authority to support his argument that the court should reduce his sentence to remedy this situation.  The Sentencing Guidelines, as well as the courts, specifically allow (and even countenance) such double counting.  Nor does Colazo-Garcia present any unusual or extraordinary equitable arguments in his case to support his request for leniency in sentencing.[3]

Finally, as both sides acknowledge (although they obviously have very different positions

---

[3] Colazo-Garcia does argue in one of his briefs that the factual assertions in his presentence investigation report, as they pertain to the previous felony at issue, *may be* inaccurate.  The felony involved is a 1996 second-degree robbery conviction imposed in California.  Colazo-Garcia argues that some of the facts associated with that crime, as set forth in his PSI, might not be completely accurate.  For example, he states that there were other individuals involved in that robbery and that the charging Information "does not reveal whether Colazo-Garcia, or one of his two (2) co-defendants actually took money from the victim . . . ." Defendant's Reply, Docket at 43, p. 2.  However, it is not the underlying facts of that crime, but rather the existence of the felony conviction itself, that is relevant here.  Even assuming Colazo-Garcia is correct, and the statement of facts related to this prior conviction as they are set forth in his PSI are not wholly accurate, he does *not* dispute the conviction itself.

on how this should apply), the overriding concern in post-*Booker* sentencing is that a district court should take into account the factors enumerated in 18 U.S.C. § 3553 when fashioning an appropriate sentence in every case. As it currently stands, Colazo-Garcia faces a Guideline sentencing range of 77 to 96 months imprisonment. This is based on a total offense level of 21 and a criminal history category of VI. Many of the factors enumerated in § 3553 are dealt with above in the court's discussion of the issues presented by the Defendant. In addition, § 3553 states that the court should consider, among other factors, "the nature and circumstances of the offense and the history and characteristics of the defendant," the "need for the sentence imposed . . . to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense," and "to protect the public from further crimes of the defendant . . . ."

In the present case, the court is mindful that the defendant has a rather extensive criminal record. The government provides a partial recitation of Colazo-Garcia's criminal history in one of its briefs in this case. *See* Government's Response to Defendant's Motion for Non-Guideline Sentence, Docket at 42, pp. 1-2. This history includes at least two drug-related convictions, the robbery conviction discussed above, and at least one alcohol-related conviction. *Id*. In addition, and perhaps more importantly in light of the charge that is the basis for this case, Colazo-Garcia previously has been deported from the United States no less than four times. *Id*. In one instance, Colazo-Garcia was arrested for (and later convicted of) attempted re-entry into the United States only two days after having been deported. *Id*. The court concludes that after consideration of these facts in relation to all the factors enumerated in § 3553, and after thorough review of all of the information contained in the Defendant's presentence investigation report as well as the evidence presented at the sentencing hearing on December 19, 2005, a sentence within the

11

applicable advisory Guideline range is both appropriate and necessary.

## CONCLUSION

For the reasons discussed herein, Defendant Jose Luis Colazo-Garcia's Motion for Downward Departure is DENIED and his Motion to Reduce Sentence is DENIED.

Dated: March 31, 2006.

   /s/   William C. Lee
William C. Lee, Judge
United States District Court
Northern District of Indiana